By the Court—Bos worth, Ch. J. Henry S. Brown,
the master, and a part owner of the Clarendon, testified that Raphael Schoyer had agreed, before the departure of the ship, to purchase her for $25,000, and had paid down, in cash, $8,000, and was to pay the other $17,000 on her arrival at San Francisco. That being paid, the voyage was to have been his own.
The ship-chandlery and stores furnished by Merritt & Trask, to secure the payment of which the claim in question was, or is claimed to have been, assigned, “ were ordered by Raphael Schoyer.” They were, of course, so ordered with the knowledge of Brown & Codman, the owners who had made this contract to sell her.
Codman, Brown and Schoyer were present when the transfer (so called) of the freight in question to Merritt & Trask was made.
It was admitted by the plaintiff that an advertisement was published from the 29th of June to the 19th of September, 1850, in the Journal of Commerce, and from the 17th of July, 1850, till the 19th of September following, in the Courier and Enquirer, to the effect that “ shippers who have engaged freight” (in the *71 Clarendon) “ will please send it on board without delay, together with their bills of lading. For balance of freight apply to R. R. Hunter, 80 Broadway, J. Belknap Smith, 88 Wall street, or to the captain or agent on board, at Pier 4, North River.”
This constitutes sufficient evidence, prima facie, that Hunter was authorized to make contracts for the carrying of cargo, and the freight to be paid therefor.
Exhibit “ J” is proved to have been written by Hunter. That furnishes some evidence that he agreed the house should be carried for one-third of the net proceeds of a sale of it.
If Schoyer had paid the $17,000 on the arrival of the Clarendon at San Francisco, so that the vessel and the voyage would have become his, I think it cannot be doubted that the evidence given and excluded would have established, as between him and Jones, such a contract as exhibit “ J” imports.
Brown & Codman, having received $8,000 of the contract price, which was to be forfeited on a failure to pay the $17,000, according to the contract, that fact, in connection with the other facts proved, furnish strong evidence that they were willing that Schoyer should, as the party deemed most interested in the result, contract for freight and agree upon the rate to be paid, and allowed him to do so, on the idea that the payment of the $8,000, with the freight to be earned, whatever it might be, would save them from loss, in any event, from the results of the voyage.
The admission by the plaintiff that the advertisement, exhibit “Gr,” was published in the newspapers named, and for the periods stated, must be regarded as an admission that it was published with the knowledge and assent of Brown & Oodman as well as of Schoyer, and that they had conferred upon Hunter the authority which it imports.
Exhibit “ Gr” implies that it was expected the shippers of goods would prepare the bills of lading to be signed, and the captain swears that they generally filled them up.
Bills of lading, filled up by Jones, were sent by him, long before the Clarendon sailed, to the office of the advertised agent, with whom he had arranged the rates of freight to be paid. The defendants were not permitted to show, either what Hunter, the advertised agent, or Schoyer, the equitable owner, said in respect thereto.
*72 There is no pretense that Jones had any communication with the master as to the shipping of the goods or the freight to be paid, or that the master or any one in his behalf or on behalf of the legal owners intimated to Jones that the property would not be carried on the terms agreed on by Hunter, although the master was advised by the bills of lading which Jones sent to be signed what he understood or claimed the contract was.
I think that the evidence given as to the authority of Hunter to act for the ship in the making of contracts for carrying merchandise is sufficient, unexplained, to bind the owners, and that /the contract he made must be deemed to be the one on which the goods were shipped by Jones, and on which the owners agreed that they should be carried to San Francisco.
The advertisement, exhibit “ Gr,” holds out Hunter, Smith, and the “ agent on board at Pier 4, North River,” as possessing the same power as “the captain,” in respect to contracting for freight for the carriage of goods on the Clarendon from New York to San Francisco.
This view makes it necessary to grant a new trial.
What the rights of the parties, growing out of the sale of the cargo, may be, assuming the contract for the transportation of the goods to be such as the answer alleges it was, or such as exhibit “ J” imports, cannot be determined upon this appeal. The cause has not been tried on that theory; and if the cpntract shall be proved, on a subsequent trial, to be such as is above suggested, other evidence may be given which will so vary the case from that presented by the present appeal as to render any principles, applicable to the case now made, irrelevant to that which may be finally established.
We are inclined to the opinion, however, that, if it shall be made to appear that anything was earned by the carriage of these goods which the defendants are liable to pay, the present plaintiff is entitled to receive it, if it shall also be made to appear that Merritt & Trask had furnished supplies for the ship while in this port which went to her use, and that the master accepted their order, with the knowledge of Schoyer and Codman, and with the intent to appropriate thereby the freight, to be earned by the carriage of the goods in question, to the payment, pro tanto, of their claim for such supplies.
*73 If such was the transaction, the equities of Merritt & Trask, and of the plaintiff as their assignee, as against Brown, Oodman and Schoyer, are as clear and strong as if exhibit “ A ” had truly expressed the actual contract for the carriage of the goods.
On such a state of facts, we are inclined to think the plaintiff may justly claim that he should not be defeated in his action to recover any freight actually earned, (if any has been earned by carrying the goods,) merely because the contract for carrying them was different in its terms from what Merritt & Trask supposed it was when they received the captain’s acceptance of their order, and on the faith of which they may have forborne to resort at the time to other remedies which would have secured, in whole or in part, the payment of their claim.
But this is a question which, for the reasons already stated, we do not think it expedient to attempt to decide on the case as it is now presented.
There must be a new trial, with costs to abide the event.
Ordered accordingly.